Campbell and others, Appellants, vs. Dick and another, Respondents.

*May 7 — June 3, 1891.*

*Replevin: Chattel mortgages: Evidence: Estoppel.*

Plaintiffs in replevin claimed to be entitled to the possession of the property under a chattel mortgage thereof taken by them as security for advances made to the mortgagor, and tried the case upon that theory. Defendants claimed under a prior mortgage from the same mortgagor. *Held,* that the plaintiffs, after resting their case, could not shift their ground and introduce evidence to show that the mortgagor never had any title, and that they had acquired the title from other persons, especially where the complaint did not allege ownership in them.

APPEAL from the Circuit Court for *Waupaca* County.

October 30, 1889, the plaintiffs, constituting the firm of Campbell Bros. & Cameron, commenced this action of replevin against the defendants, constituting the firm of Dick & Berkley, to recover the possession of one span of bay horses, weighing about 2,800 pounds, six sets of logging sleds, and three yokes of heavy oxen, of the value in the aggregate of $650, alleged to have been wrongfully detained

by the defendants from the plaintiffs to their damage in a sum stated; and, to sustain such claim, relied principally upon a chattel mortgage executed to them by Frank Jackson, September 21, 1888, and filed September 22, 1888, to secure the payment of $750. The defendants claimed to be the owners of the property, and lawfully entitled to the possession thereof as such, under and by virtue of a chattel mortgage executed to them by Frank Jackson, April 15, 1886, and additions thereto, and a renewal thereof on or about April 11, 1888, to secure the payment of $1,018.62.

A jury having been waived, the cause was tried by the court, and at the close of the trial the court found, as matters of fact, in effect, that the plaintiffs claimed title to said property under said chattel mortgage of September 21, 1888; that, at the time of executing the same, the said Jackson was the owner of four yokes of heavy oxen for logging purposes, and eight sets of logging sleds which he had used the previous winter in the woods; that the description in said mortgage was indefinite and uncertain as to which three yokes of said oxen and which six sets of said sleds were covered thereby; that said mortgage covered and included property that was then by law exempt from sale upon execution, but that the said Jackson's wife, then living with him, did not sign the same; that prior to the time of receiving said mortgage the plaintiffs had actual notice of the existence of the chattel mortgage given by said Jackson to the defendants; that the value of the horses described in the complaint, at the time they were replevied, was $225; that the value of the three yokes of oxen at that time was $285; that the value of the six logging sleighs at that time was $150, making a total of $660; that the defendants took the property described in the complaint from said Jackson, October 26, 1889, under and by virtue of a chattel mortgage executed by Jackson, April 15, 1886, to them, in good faith, to secure a *bona fide* indebtedness to them of $1,018.62; that there was still due

Campbell and others vs. Dick and another.

thereon $1,161.22; that said mortgage covered and included the very bay team and three of the oxen and the six sets of logging sleighs described in the complaint; that the other oxen described in the complaint were in good faith added to and included in said last-named mortgage by said Jackson and the defendants in the spring of 1888; that after said additions to that mortgage the same was, April 11, 1888, duly renewed by the filing of the proper affidavit of renewal; that the plaintiffs had due notice of such renewal prior to September 21, 1888; that October 26, 1889, said Jackson turned over and delivered all of the property described in the complaint to the defendants on their said chattel mortgage and debt thereby secured, and the defendants thereupon received the same upon such indebtedness and mortgage before the commencement of this action; that the defendants have been damaged ten cents by the plaintiffs taking from them the possession of said property; that the defendants do not claim a delivery thereof to them; that the value of the defendants' interest in said property is the amount of their said indebtedness against said Jackson secured by said mortgage; that at the time of the commencement of this action the defendants were and still are the owners of the property described in the complaint, and entitled to the possession thereof, and are still so entitled.

And, as conclusions of law, the court found, in effect, that the plaintiffs' chattel mortgage was void; that the defendants' chattel mortgage was valid; that at the time of the commencement of this action the defendants were and still are the owners of the property described in the complaint, and entitled to the immediate possession thereof; that the defendants were entitled to judgment against the plaintiffs for ten cents damages, and $660, the value of the property taken, together with the costs and disbursements of this action; and judgment was ordered accordingly. From the judgment entered thereon the plaintiffs appeal.

For the appellants there was a brief by *Phillips & Kleist*, and oral argument by *M. C. Phillips*.

For the respondents there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

CASSODAY, J.   The court found that the mortgage given to the defendants by Jackson, the additions thereto, and the renewal thereof, were each and all made in good faith and to secure a *bona fide* indebtedness, and prior to the execution of the mortgage to the plaintiffs.   There is plenty of evidence to support such findings.   This being so, it is manifest that the defendants have a right to all the property actually covered by their mortgage which is superior to any claim of the plaintiffs under their mortgage.   One of the questions, therefore, presented is whether the mortgage of the defendants covered the property described in the complaint, or any part of it.

The mortgage of the defendants, as originally given, covered one dark bay team weighing about 2,800 pounds, one of which was ten years old, and the other nine years old, with a white star in his face.   The court found that to be the same span of horses described in the complaint, and the undisputed evidence sustains the finding.   The same is true respecting the six sets of logging sleds covered by the mortgage as originally given to the defendants, and which the court found to be the same sleds mentioned in the complaint.   The mortgage of the defendants covered seven oxen, described therein as follows: " Seven oxen — one red, about ten years old, same as bought of E. E. Carline; one light red and one dark red, white and red face, about seven years old, same as bought of Wm. Smith; one yoke of oxen, one dark and white star in face, one spotted white and red, about nine years old, same as bought of Craige; . . . one yoke of brindle cattle, age five years, bought of Olsen."   The mortgage also recited, in effect, that the

property described was,.at the time, in the possession of Jackson, that he was the sole owner thereof, and that the same was entirely free from all legal incumbrances. The court found, in effect, that three of the oxen described in the complaint were covered by the mortgage as originally given to the defendants, and that the other three oxen described in the complaint were in good faith, and to secure a *bona fide* indebtedness, added to and included in that mortgage by Jackson in the spring of 1888, and prior to the renewal thereof. There appears to be sufficient evidence to support such findings. Such being the facts, it is very obvious that the plaintiffs have no right, under their mortgage, to any property mentioned in the complaint, as against the defendants.

This renders it unnecessary to consider the questions elaborately discussed by counsel, as to whether the mortgage given to the plaintiffs was void for uncertainty as to the oxen and the sleds, or as to whether it was void by reason of its covering exempt property and not having been signed by Jackson's wife.

After counsel for the plaintiffs had announced to the court on the trial that the evidence on their part was closed, they offered to prove, in effect, that in 1884 and 1885 the plaintiffs made certain written logging contracts with Jackson, whereby they agreed to advance to him $700 with which to purchase teams, sleds, and supplies to do the job, the title to which was to be and remain in the plaintiffs until the logs had been delivered and the contract completed and the money so advanced had been repaid by Jackson. The court excluded such evidence, and after the defendants rested such evidence was again offered by the plaintiffs in rebuttal, and again excluded. The plaintiffs now assign such rulings as error. The plaintiffs took their mortgage from Jackson on the property in controversy, September 21, 1888, to secure the repayment of such ad-

vances.   The complaint nowhere alleges that the plaintiffs were the owners of any of the property therein described, unless it be inferentially from the allegations to the effect that the oxen had been purchased by Jackson as their agent. One of the grounds upon which the court excluded the evidence was to the effect that, the plaintiffs having taken the chattel mortgage on the property in question as security for such advances, and having tried their case, and rested, upon the theory that they were entitled to such property under that mortgage, they were in no position to shift their ground, and try the case over again on the theory that Jackson never had any title to the property, but that such title had all the time been in themselves under such contracts.   Such rulings seem to have been very proper.   Until the plaintiffs closed their testimony, both parties claimed the property under their respective mortgages from Jackson, and consequently the plaintiffs were estopped from shifting their ground of action and retrying the case on the theory that Jackson never had any title, but that the plaintiffs had acquired the same from other parties.  *Schwallbach v. C., M. & St. P. R. Co.* 69 Wis. 292; *Bond v. Carroll,* 71 Wis. 347; *Gilliam v. Bird,* 49 Am. Dec. 379, and cases cited in the notes; *Hamilton v. Frothingham,* 71 Mich. 616; *Hecock v. Van Dusen,* 80 Mich. 359.   Especially should that be the rule where, as here, the newly-proposed cause of action thus sought to be proved is not alleged in the complaint.

*By the Court.*— The judgment of the circuit court is affirmed.